[Civ. No. 3407. Third Appellate District.—February 16, 1929.]

THOMAS A. JOYNER, Petitioner, v. W. S. KINGSBURY, etc., Respondent.

Roy Maggart, Geo. B. Bush, Thomas A. Joyner and Philip C. Farman for Petitioner.

U. S. Webb, Attorney-General, and Thomas H. Christianson, Deputy Attorney-General, for Respondent.

Faries & Williamson, *Amici Curiae.*

PLUMMER, J.—This cause is before us upon the petition of Thomas A. Joyner, praying that a writ of mandate be issued directed to the respondent, commanding him to issue a permit to prospect for oil and gas under the provisions of the act of May 25, 1921 (Stats. 1921, p. 404), on certain lands and premises described in the petition.

The petition sets forth that all of the requirements of the act referred to preceding the issuance of a permit have been complied with. It appears therefrom that the petitioner is a citizen of the United States; that notice has been given as required by the act, and without going into details, it is

sufficient to state that all of the things required to be performed by the petitioner, leading up to the issuance of a permit, appear to have been performed in strict compliance with the act of the legislature approved May 25, 1921. The lands upon which the petitioner seeks a permit to prospect for oil and gas are located in the county of Orange; contain about 100 acres; are irregular in shape, and located within the city limits and boundaries of the city of Huntington Beach. The lands are further described as tide-lands belonging to the state of California, the width of the tract extending one-quarter of a mile along the line of ordinary high tide and the side lines thereof at right angles to said line of high tide, the length not exceeding two and one-half times the width. The petition further sets forth that the said lands are not within any known geological structure of a producing oil or gas field. Upon the filing of the petition an order to show cause was issued by this court, and upon the return date fixed in said order the respondent appeared and filed a demurrer and answer to said petition.

Since the submission of this cause the supreme court in the case of *Boone* v. *Kingsbury*, 206 Cal. 148 [273 Pac. 797], and in six other cases involving similar questions, has decided all but one of the questions presented to us for consideration relative to the construction of the act of the legislature herein referred to, leaving undetermined whether a permit may or may not lawfully be issued where the tide and submerged lands are situate within the corporate limits of a city or town.

Section 4 of the act approved May 25, 1921, after providing fully for the issuance of permits, the method of procedure, etc., contains the following proviso: "Provided further, however, that in no case shall permits or leases be granted covering tide, overflowed or submerged lands fronting on an incorporated city, or for a distance of one mile on either side thereof." In the Boone case and the others referred to therein, none of the lands involved fronted upon any incorporated city, nor were they situated upon any harbor, bay, inlet, or estuary, nor were they within the inhibitions of the distance limit found in section 3 of article 15 of the constitution, concerning the sale of tide and submerged lands.

Are tide-lands or submerged lands within the limits or boundaries of cities and towns included within the terms of the prohibition against leasing or the granting of permits found in section 4 above quoted? On the part of the respondent it is contended, first, that all of the lands for which the petitioner seeks a permit are included within both the letter and spirit of such prohibitory clause. On the part of the petitioner it is contended that the prohibitory clause refers only to tide-lands that are situate outside and within one mile of the exterior boundaries of incorporated cities and towns. The respondent makes the second contention that the limits of the city of Huntington Beach are really along the line of high tide, even though the corporate limits of the city purport to extend out a sufficient distance over the tide and submerged lands bordering upon the ocean to include all of the area for which a permit is sought by the petitioner. These contentions call for an interpretation of the prohibitory clause found in section 4, which specified that in no case shall permits or leases be granted covering tide, overflowed, or submerged lands fronting on an incorporated city, or for a distance of one mile on either side thereof. The words "fronting upon," in their ordinary acceptance, undoubtedly bear the interpretation placed thereon by the petitioner, to wit, that it refers to the land which in its exterior boundary reaches to, impinges upon and is limited by the line which defines the exterior boundary or some other tract, parcel, or object. For example, lots fronting upon a street. The lots are outside of the street; the street is outside of the lots; the fronting line is the line of delimitation between the lots and the street. We may also admit that the petitioner's contention that when a parcel of land or object is spoken of as within a distance of one mile on either side thereof, the ordinary intendment is that reference is had to a parcel of land or an object within that distance beyond the exterior side lines of a city or town. But when it comes to the performing of an act which would be just as detrimental to the welfare, the business conditions, or the enjoyment and use of residential property, whether performed within one mile outside of the exterior boundaries of a city or town, or inside of the exterior boundaries of a city or town, then the prescribed distance of "one mile on either side thereof" takes on an added signifi-

cance. It then becomes a question of giving effect, and to so read, the language of the statute has to give effect to the full meaning and intent of the legislature, and it is the duty of the court to give such construction unless it does violence to the language of the act. A reading of the act in question leads, we think, unerringly to the conclusion that the legislature had in mind the granting of permits and the leasing of oil lands in such a manner, and to such an extent only as would in nowise interfere with the orderly enjoyment of city property and the demands of commerce and navigation, and in such a way as not in any manner to obstruct ingress or egress to and from the sea, and if any structure, work, or development upon tide or submerged lands within one mile of the incorporated limits of a city or town would work such injury or obstruction, we think it immaterial whether that obstruction, structure, or use was proposed to be erected or made on state lands, whether inside or outside of the side lines of an incorporated city or town. The evil to be obviated or prevented is just the same whether inside or outside. True, a city may prevent, by zoning ordinances, certain occupations, structures, or uses within prescribed areas within the exterior boundaries of its corporate limits, as argued by the petitioner, but the exercise of such domain over state lands within the corporate limits of a city or town is an entirely different matter.

The petitioner has cited a number of different acts relative to the sale of marsh and swamp lands, where the language of the act refers to lands situate within the boundaries of cities and towns, and also where such lands are situate within a given number of miles of the exterior boundaries of cities and towns, and argues therefrom that whenever the legislature intends to prohibit any act in relation to state-owned lands which lie within the boundaries of any city or town, it uses the word "within," instead of the language as found in the prohibitory clause of section 4 of the leasing act under consideration. While this is true of many of the acts referred to, there is one section of the Political Code, and the construction given to it by the supreme court, which we think decisive of this case. Section 3488 of the Political Code, so far as pertinent here, reads as follows: "All swamp and overflowed marsh and tide lands within one mile of the State Prison at San Quentin, within the City

and County of San Francisco, City of Oakland, or within five miles of the corporate limits of either, and tide lands within two miles of any other incorporated city or town, are excluded from the operation of this chapter."

In the case of *Williams* v. *City of San Pedro,* 153 Cal. 44 [94 Pac. 234], the court had before it the construction of language almost identical with that which we are considering, to wit, the words "within two miles of an incorporated city," and used the following language: "At the time of such application to purchase, and ever since, section 3488 of the Political Code provided in terms that all tide lands within two miles of any incorporated city or town, other than San Francisco or Oakland, are excluded from the operation of the provisions of law authorizing the sale of state lands. This provision withheld from the state officers all authority to grant or sell tide lands within the city of San Pedro. The contention of appellant that this limitation as to lands subject to sale applies only to lands situate outside and not exceeding two miles beyond the limits of incorporated cities and towns, is not of sufficient force to merit discussion. Lands in the city of San Pedro are necessarily within two miles thereof, and there is nothing in the language used by the legislature in former statutes, or in the particular statutes with reference to tide lands in San Francisco or Oakland, which compels a contrary construction." The court held that the state officials had no authority to convey lands within the prescribed area. We see no escape from the conclusion that the lands upon which the petitioner seeks a permit to prospect for oil are within the prescribed area. And for this reason the petition must be, and the same is hereby, denied.

Finch, P. J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on March 18, 1929, and petitioner's application to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 15, 1929.

All the Justices concurred.